**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LINDA ANGULO, indiv. and d/b/a STDG, INC. and d/b/a SELENA'S SPORTS BAR and STDG, INC. d/b/a SELENA'S SPORTS BAR, <br><br> Defendants. | No. 08 C 2585 <br> Judge James B. Zagel |

## MEMORANDUM OPINION AND ORDER

**I. BACKGROUND**

> Mayorga opens with a right that is blocked. De La Hoya measures Mayorga with his left jab. Mayorga scores with a straight right. De La Hoya responds with a flurry and knocks down Mayorga for a second time. De La Hoya continues the attack, hitting Mayorga mercilessly for the knockout.

David Cooper, *Danger Zone: Mayorga - De La Hoya Round by Round*, ESPN.COM, May 6, 2006 http://sports.espn.go.com/sports/boxing/news/story?id=2435518. So went the sixth round, and with that, Oscar "The Golden Boy" De La Hoya beat Ricardo "El Matador" Mayorga to take the World Boxing Council's Super Welterweight crown on May 6, 2006.

J&J Sports Productions ("J&J"), the Plaintiff here, had exclusive commercial rights to distribute the broadcast of that fight to hospitality businesses. J&J sued the Defendants here on the theory that Defendants displayed the fight in their sports bar without permission from or payment to J&J. Defendants answered the complaint with denials, but since that filing they have been essentially absent from this lawsuit. J&J moves for summary judgment based in part on

facts they have established through discovery and in part on facts I have deemed admitted because of Defendants' near-total lack of cooperation in the litigation. The motion is granted.

## II. STANDARD OF REVIEW

Summary judgment under Rule 56 is appropriate if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( c). *See Celotex v. Catrett*, 477 U.S. 317, 422 (1986); *see also Vision Church v. Vill. of Long Grove*, 468 F. 3d 975, 988 (7th Cir. 2006). A court evaluates the evidence in the light most favorable to the non-moving party, making no determinations about the credibility of witnesses or the weight of the evidence. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986); *see also Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir. 2008).

The evidence submitted in summary judgment briefing and argument must be admissible at trial, though sworn testimony, such as from a deposition or affidavit, may be considered. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Scott v. Edinburg,* 346 F.3d 752, 759-60, n. 7 (7th Cir. 2003).

Through Rule 36, parties may seek to have "facts, the application of law to fact, or opinions about either" admitted. Fed. R. Civ. P. 36(a). If not answered or objected to within thirty days of service (or without some relief from the court) the matters are deemed "conclusively established." *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 607 (7th Cir. 2008).

## III. STATEMENT OF FACTS

J&J was granted the exclusive nationwide television distribution rights to *Danger Zone: The Oscar De La Hoya v. Ricardo Mayorga Championship Fight Program* (the "Program"). The Program included the title fight itself, several undercard bouts, and commentary. J&J made its

money by offering sublicenses of the Program to establishments like casinos, bars, and restaurants that wanted to show the fight to patrons. The prices were determined by the size and nature of the establishment.

Selena's Sports Bar was one such establishment. Located at 6320 W. 26th Street in Berwyn, Illinois, it is the business operation of the Defendants. The going rate for a sublicense for an establishment like Selena's was $2,000. Rather than pay the $2,000, however, Defendants received and decoded the satellite signal and displayed the Program to approximately forty patrons. They enticed those patrons at least in part by advertising the fight. The patrons had paid a cover charge or some other fee to enter and watch the fight broadcast on one of two screens on which it was displayed. The Defendants did all this willfully, with full knowledge that proper licensing was required from J&J. Defendants' motivation in receiving and broadcasting the Program was their own financial gain.

J&J knew of Selena's display of the Program because they had a private investigator go to Selena's on the night of the fight on the suspicion that Selena's would illicitly show the Program to patrons. The investigator reported his findings back to J&J, and on that basis J&J filed suit on May 6, 2008. Defendants did not answer the complaint initially. After J&J moved for default, Defendants answered with rote denials on March 12, 2009. Other than the single, compelled deposition of Linda Angulo on April 14, 2010, Defendants did not meaningfully respond to any discovery requests from J&J, including document requests, interrogatories, and requests for admission. The latter request was served on June 8, 2009 and as of July 9, 2010 Defendant had not answered, responded, or otherwise requested relief. I therefore deemed the facts admitted in an order entered on August 16, 2010.

In the same order I denied J&J's first motion for summary judgment without prejudice because it did not contain a Local Rule 56.1 statement of facts. J&J has now properly moved for summary judgment, with nothing heard from the Defendants despite a response deadline that passed on October 28, 2010. J&J seeks $2,000.00 in statutory damages under 47 U.S.C. § 605(e)(3)(C)(i)(II), an additional $15,000.00 for "willful" conduct under 47 U.S.C. § 605(e)(3)(C)(ii), and $4,981.25 in fees.

## IV. DISCUSSION

Largely because they were established by Defendant's failure to respond to requests for admissions, the facts as recited above "doom the case" for Defendants. *Fabriko Acquisition*, 536 F.3d at 607.

With exceptions not relevant here, 47 U.S.C. § 605(a) states:

> [No] person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. 605(a). The statute has been generally interpreted to prohibit commercial establishments from intercepting and broadcasting satellite cable programming, whether

4

scrambled or unscrambled. *See United States v. Norris*, 88 F.3d 462 (7th Cir. 1996); *see also That's Entertainment v. J.P.T., Inc.*, 843 F. Supp. 995, 999 (D. Md. 1993). More specifically, numerous decisions from district courts in this circuit indicate that § 605(a) applies under circumstances virtually identical to this case. *See, e.g., Joe Hand Promotions, Inc. v. Kaczmar*, 2008 U.S. Dist. LEXIS 88199 (N.D. Ill. 2008); *Garden City Boxing Club, Inc. v. Dominguez*, 2006 U.S. Dist LEXIS 38184, *6-*12 (N.D. Ill. 2006); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 958 (E.D. Wis. 2001). In fact, this exact Plaintiff has won at least one default judgment under § 605(a) against another establishment for this exact Program. *See J&J Sports Productions v. Aceves*, 2010 U.S. Dist. LEXIS 112108 (N.D. Ill. 2010). I therefore find that Defendant has committed an actionable violation of § 605(a) and that the violation was willful and was done for financial gain. All that remains is the question of damages.

Plaintiff's first claim for relief is for statutory damages of $2,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II). This section leaves it to the discretion of the judge to award damages between $1,000 and $10,000. Plaintiff also had the option of seeking actual damages under 47 U.S.C. § 605(e)(3)(C)(i)(I). Indeed, the request for $2,000.00 seems to coincide with what J&J asserts the price for the sublicense would have been for Defendants. Whatever the rationale, $2,000.00 is reasonable under the circumstances and so it is awarded pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II).

Plaintiff's second request, the one for $15,000.00 in enhanced damages for "willful" conduct under 47 U.S.C. § 605(e)(3)(C)(ii), is a slightly different story. It is true that in cases where courts find willful violations arising from the desire for private financial gain they may

increase damages to sum up to $100,000. *See id.* But Plaintiff has given no rationale for the $15,000.00 request beyond the bare language of the statute.

In assessing enhanced damages, courts have considered 1) the number of violations; 2) defendant's unlawful monetary gains; 3) plaintiff's actual damages; 4) whether defendant advertised for the event; and 5) whether defendant collected a cover charge on the night of the event. *Kaczmar*, 2008 U.S. Dist. LEXIS 88199 at *7. Here, there is no affirmative proof of prior violations. J&J has established that Defendants have "broadcast professional boxing matches other than the event," but it has not proven that those showings were in violation of § 605(a). Similarly, there is no proof of Defendant's illicit gains. As discussed above, the actual damages appear to be roughly $2,000.00, the price of the sublicense for an establishment like Selena's Sports Bar. Defendants did advertise and there was a cover charge. Considering these factors, $15,000.00 seems harsh. I award an additional $4,000.00 on the willful violations claim.

Finally, Plaintiff seeks its fees and costs, as they are entitled to under $15,000 for "willful" conduct under 47 U.S.C. § 605(e)(3)(B). Counsel for J&J has submitted an affidavit detailing his charges in the case. I reviewed the affidavit and the fees and costs seem reasonable, especially given the delays attendant with pursuing this case. I award the requested $4,981.25.

## V. CONCLUSION

Plaintiff's motion for summary judgment is GRANTED. Plaintiff is awarded a total amount of $10,981.25.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: February 8, 2011